THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KATHLEEN BOWERS,

                Plaintiff,

      v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, et al.,

                Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 97-2600 (JBS)

**OPINION**

APPEARANCES:

Barbara E. Ransom, Esq.
PUBLIC INTEREST LAW CENTER OF PHILADELPHIA
125 South Ninth Street, Suite 700
Philadelphia, PA 19107
    and
Richard L. Bazelon, Esq.
Penelope A. Boyd, Esq.
Noah H. Charlson, Esq.
BAZELON, LESS & FELDMAN, P.C.
Sagemore Corporate Center
10000 Sagemore Drive, Suite 10202
Marlton, NJ 08053-3944
    Attorneys for Plaintiff

J. Freedley Hunsicker, Jr., Esq.
Daniel H. Aiken, Esq.
Kathryn Elizabeth Bisordi, Esq.
DRINKER, BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
    Attorneys for Defendant National Collegiate Athletic
    Association

John B. Langel, Esq.
BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
Plaza 1000
Main Street, Suite 500
Voorhees, NJ 08043-4636
    Attorney for Defendant Temple University

Jack Jay Wind, Esq.
Robert E. Marguiles, Esq.
MARGULIES, WIND, HERRINGTON & KNOPF
15 Exchange Place, Suite 510
Jersey City, NJ 07302-3912
     Attorneys for Defendant University of Iowa

**SIMANDLE,** District Judge:

     This extensively litigated case arises out of Plaintiff's
allegation that during the 1995-1996 academic year, Defendants
subjected her son to unlawful discrimination on account of his
learning disability.  Presently before the Court is Plaintiff's
motion [Docket Item 377] to compel the deposition testimony of a
Rule 30(b)(6) witness from the National Collegiate Athletic
Association ("NCAA") and the production of related discovery
materials.  As the Court explains in greater detail below,
Plaintiff's motion comes after more than a decade of litigation
and two discovery periods, and is directed at obtaining evidence
with marginal relevance to the issues underlying this action.
For the reasons explained below, therefore, the Court will deny
Plaintiff's motion to compel.

**I.   BACKGROUND**

     The facts and procedural history of this case have been
discussed in detail in numerous opinions issued by this Court and
the Court of Appeals, and so the Court will summarize only those
facts that pertain to the instant motion.  At issue in this
action are the policies of the NCAA pertaining to the initial

eligibility of student athletes as they existed in 1995-1996, when Plaintiff's son, Michael Bowers,[1] submitted an application to the NCAA Initial-Eligibility Clearinghouse (the "Clearinghouse"), the organization responsible for assessing the eligibility of potential student athletes to participate in college sports.  At the time of the 1995-1996 school year, the Clearinghouse reviewed students' applications and placed applicants into one of three categories: qualifier, partial qualifier, or nonqualifier.  In brief, Plaintiff alleges that her son was designated as a nonqualifier largely on account of his high school special education curriculum, that such a designation discriminated against him on account of his learning disability, and that the designation negatively impacted his opportunity to receive an athletic scholarship.

Michael Bowers filed the original Complaint in this case on May 23, 1997 [Docket Item 1], alleging that the NCAA and the Clearinghouse had violated Titles II and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132, 12182, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).[2]

---

[1]  Plaintiff Kathleen Bowers' son, Michael, was the initial plaintiff in this case.  Michael Bowers died in June 2002 and his mother has been substituted as Plaintiff.

[2]  Plaintiff amended the Complaint to assert additional claims based on the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, et seq., and to name Temple University, the University of Iowa, and the American International College as defendants.

Since the initiation of this action, in addition to engaging in extensive motion practice, the parties participated in two rounds of discovery – one between August 1997 and April 1999, and another following the initial remand from the Court of Appeals in August 2003 through the summer of 2004.  In addition to a large-scale exchange of documents during these rounds of discovery, Plaintiff conducted various depositions that are relevant to the instant motion.  On February 2, 1999 and March 2, 1999, Plaintiff deposed then-vice-president of NCAA member services Kevin Lennon, who testified about, inter alia, the organization's initial eligibility requirements as they existed during the 1995-1996 school year and afterward.  (Def.'s Opp'n Br. Ex. 3.)  Also in March 1999, Plaintiff deposed the NCAA's then-president Cedric Dempsey, who likewise testified about the organization's initial eligibility requirements.  (Def.'s Opp'n Br. Ex. 4.)  Finally, on April 7, 1999, Plaintiff deposed the NCAA's director of research, Todd Petr, whose testimony discussed the organization's research into its initial eligibility requirements between 1995 and 1999. (Def.'s Opp'n Br. Ex. 5.)

On March 21, 2005, the Court issued an Opinion and Order [Docket Items 319 and 320], which, inter alia, granted Defendants' motion for summary judgment.  Plaintiff appealed this decision to the Court of Appeals, which, on February 1, 2007, reversed the March 21, 2005 summary judgment Order but affirmed

4

various discovery sanctions against Plaintiff Bowers.  <u>See</u> <u>Bowers</u>
<u>v. National Collegiate Athletic Ass'n</u>, 475 F.3d 524 (3d Cir.
2007).  After the case was remanded by the Court of Appeals, the
parties agreed to participate in Court-annexed mediation pursuant
to Local Civil Rule 301.1 and Appendix Q [Docket Item 365], and
after efforts to mediate the case failed, the Court issued an
Order [Docket Item 374] reopening the case.  The motion to compel
presently before the Court was filed shortly thereafter.  At a
February 25, 2008 hearing, the Court heard oral argument from the
parties regarding the merits of Plaintiff's motion and reserved
decision.

## II.  DISCUSSION

### A.   The Parties' Arguments

#### 1.   <u>Plaintiff's Motion</u>

In her motion to compel, Plaintiff requests that the Court
order the NCAA to produce a witness to testify about the changes
in the organization's initial eligibility bylaws and policies
relating to high school students with learning disabilities that
have occurred since the 1995-1996 academic year.  Relatedly,
Plaintiff's motion seeks to have Defendants produce four
categories of documents at least fourteen days prior to the
requested deposition:

> 1.   All documents concerning the changes in the NCAA's
>      bylaws, policies, rules and practices in place to
>      determine   the   initial   eligibility   of
>      student-athletes  with  learning  disabilities  who

seek qualifier status to the NCAA's Division I and Division II member institutions, 1995-96 to the present.

2.    All documents concerning the research, data, analysis, reports, and other information concerning the reasons for the changes in the NCAA's bylaws, policies, rules, and practices concerning initial eligibility for students with learning disabilities and the impact on their academic success and graduation rates, from 1995-96 up to and including the present, including all communications with DOJ concerning initial eligibility for students with learning disabilities.

3.    All documents concerning the research, data, analysis and other information concerning the effects of the changes in the NCAA's bylaws, policies, rules, and practices concerning initial eligibility for students with learning disabilities, from 1995-96 up to and including the present, including the effect of these changes on academic success and graduation rates, and including all communications with DOJ concerning initial eligibility for students with learning disabilities.

4.    Data, analysis, reports and other information from the NCAA's Clearinghouse and its Academics/Eligibility/ Compliance Cabinet on the rules, policies and practices concerning the initial eligibility for students with learning disabilities from 1995-96 up to and including the present, including the certification of special education courses as core courses, the acceptance of untimed SAT and ACT scores and the waiver process for students with disabilities.

(Pl.'s Br. 6-7.)

In support of her motion, Plaintiff argues that the requested discovery is relevant to Defendants' potential defense at trial that the initial eligibility requirements were necessary in 1995-1996 in order for the NCAA to achieve its goal of

ensuring that student athletes succeeded academically in college.[3]  Specifically, Plaintiff notes that in its November 2, 2000 Opinion denying Defendants' motion for summary judgment on Plaintiff's ADA claim, the Court, through former Judge Orlofsky, reasoned that "[e]ligibility criteria that 'screen out' or 'tend to screen out' disabled individuals violate the ADA unless the proponent of the eligibility criteria can show that the eligibility requirements are necessary."  Bowers v. National Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 518 (D.N.J. 2000) (quoting 42 U.S.C. § 12182(b)(2)(A)(i)).  Plaintiff thus argues that a central issue in this case turns on whether the 1995 initial eligibility requirements were necessary in order for Defendants to achieve a legitimate objective.

Plaintiff notes that the eligibility requirements that were in place in 1995 have since been altered, which, she argues, suggests that the 1995 policies were not necessary to the achievement of the NCAA's purposes.  Plaintiff points specifically to a March 26, 1998 Consent Decree entered into between the NCAA and the Department of Justice ("DOJ"), under which the NCAA agreed to modify its initial eligibility

---

[3]  Plaintiff also argues that the NCAA's "anticipated Rule 407 objection" to her motion does not provide a basis for denying the motion to compel.  (Pl.'s Br. 14.)  Because the NCAA does not raise an objection to the instant motion based on Federal Rule of Evidence 407, the Court does not address Plaintiff's argument on this issue.

requirements.  (Pl.'s Br. Ex. 2.)  The Consent Decree remained in effect until May 1, 2003.  (Id.)  Plaintiff argues that she does not know "the full extent and timing of the changes in the NCAA's Bylaws and practices as a result of the Consent Decree, and after the Consent Decree expired," (Pl.'s Br. 12), and reasons that because such information bears on the NCAA's necessity defense, the Court should authorize the discovery requested in Plaintiff's motion.

    2.  <u>NCAA's Opposition</u>

The NCAA argues that the Court should deny Plaintiff's motion on all of the grounds set out in Federal Rule of Procedure 26(b)(2)(C).  That Rule provides that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

F. R. Civ. P. 26(b)(2)(C).

With regard to Rule 26(b)(2)(C)'s first consideration – the
cumulative or duplicative nature of the discovery sought – the
NCAA argues that Plaintiff has already had, and exercised, the
opportunity to obtain the very evidence she seeks in her motion
to compel.  The NCAA points to Plaintiff's 1999 depositions of
Mr. Lennon, Mr. Dempsey, and Mr. Petr, at which Plaintiff
questioned the witnesses not only about the NCAA's eligibility
bylaws during the 1995-1996 school year, but also about the
changes in the organization's policies undertaken as a result of
the DOJ Consent Decree.  Compelling the NCAA to produce more
documents and more deponents on this same subject, it argues,
would not only be duplicative of prior discovery, but the
evidence produced would be less relevant than that which was
initially produced, given that more than twelve years have
elapsed since Plaintiff's son was allegedly injured as a result
of the eligibility requirements.

Next, with regard to Plaintiff's "ample opportunity to
obtain the information by [prior] discovery," id., the NCAA draws
the Court's attention to multiple cases in this Circuit finding
that parties with less time and fewer discovery opportunities
than Plaintiff had been given ample discovery opportunities and
were not entitled to pursue further avenues of discovery.  See,
e.g., FLOORgraphics, Inc. v. News America Marketing In-Store
Services, Inc., No. 04-3500, 2007 WL 1613217 (D.N.J. June 1,

9

2007); <u>Maertin v. Armstrong World Industries, Inc.</u>, No. 01-5321, 2007 WL 758073 (D.N.J. Mar. 8, 2007).  The NCAA argues that over more than a decade of litigation and two discovery periods, Plaintiff has had ample discovery opportunities and should not be permitted another by means of the instant motion.

Finally, the NCAA argues that "the burden or expense of the proposed discovery outweighs its likely benefit."  F. R. Civ. P. 26(b)(2)(C)(iii).  In highlighting the burdens of the proposed discovery, the NCAA emphasizes Plaintiff's request for documents in advance of the proposed deposition(s), which the NCAA argues would require it to produce "all documents that relate in any way to NCAA rules for a nearly 13[-]year time frame spanning 1995 to 2008."  (Def.'s Opp'n Br. 9.)  Such burdensome production is not warranted by the likely benefit of the proposed discovery, according to the NCAA, because the facts in this case focus on the organization's policies in 1995-1996.  As the NCAA reasons, because there is no claim for ongoing injunctive relief regarding the NCAA's post-1996 policies, to the extent that any of the proposed discovery is not duplicative of evidence Plaintiff already has, such evidence is likely to be of minimal relevance to Plaintiff's claims given its temporal remoteness to the issues in this case.

**B.   Analysis**

The Court agrees with the NCAA that Plaintiff's proposed
discovery is not proportional to the needs of this case and will
deny Plaintiff's motion to compel.  As the Court of Appeals for
the Third Circuit has explained, while "the scope of discovery
under the Federal Rules is unquestionably broad, this right is
not unlimited and may be circumscribed."  Bayer AG v. Betachem,
Inc., 173 F.3d 188, 191 (3d Cir. 1999).  This Court has "broad
discretion to tailor discovery narrowly" to meet the needs of
each particular case.  Crawford-El v. Britton, 523 U.S. 574, 598
(1998).  Such discretion is evident in Rule 26(b)(2)(C)'s
direction that courts should "limit the frequency or extent of
discovery" where the proposed discovery is unreasonably
duplicative, where the discovering party has already had an ample
opportunity to obtain the information in question, or where the
burden of the discovery would outweigh its likely benefit.  F. R.
Civ. P. 26(b)(2)(C).  This rule of proportionality "is intended
to guard against redundant or disproportionate discovery by
giving the court authority to reduce the amount of discovery that
may be directed to matters that are otherwise proper subjects of
inquiry."  Leksi, Inc. v. Federal Ins. Co., 129 F.R.D. 99, 105
(D.N.J. 1989) (quoting Fed. R. Civ. P. 26 advisory committee
note) (internal quotations omitted); see also Public Service
Enterprise Group, Inc. v. Philadelphia Elec. Co., 130 F.R.D. 543,

551 (D.N.J. 1990) (employing the rule of proportionality to exclude "marginally relevant evidence" from the scope of discovery).[4]

The discovery sought by Plaintiff in the instant motion to compel is disproportionate to the needs of the case for two reasons. First, the Court agrees with the NCAA that Plaintiff has had more than "ample opportunity" to explore the issues she seeks to probe in the proposed deposition. F. R. Civ. P. 26(b)(2)(C)(ii). Plaintiff seeks to depose an NCAA witness in order to update the evidence she has collected regarding the organization's initial eligibility requirements and the fact that

---

[4] At the outset, although not argued by the parties, the Court is satisfied that this discovery sought by Plaintiffs is not within the NCAA's duty of supplementation of previous responses under Rule 26(e)(1), F. R. Civ. P. That rule requires that a party must correct or supplement its prior disclosure or response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." F. R. Civ. P. 26(e)(1)(A). In this case, defense counsel have indicated that the prior discovery responses involving the policies in effect through 2001 were correct and complete, and that they are aware of their duty to supplement if they become aware of new materials that would provide additional or corrective information. The discovery at issue herein, on the other hand, seeks to enlarge the scope of prior discovery to the present time, regarding practices and policies having no application to this Plaintiff. Moreover, even if the duty of supplementation were held to apply to new matters that somehow relate to the historic facts at issue in the case, the duty of supplementation itself is subject to the rule of proportionality under F. R. Civ. P. 26(b)(2)(C), which forms the overall limitations on the scope and extent of discovery that is otherwise permitted under Rules 26-36, F. R. Civ. P.

those requirements have changed since the 1995-1996 academic
year.  When Plaintiff initially deposed Mr. Lennon, Mr. Dempsey,
and Mr. Petr in 1999, however, she had the opportunity to ask
about the evolution of the eligibility requirements over the
course of three years, and, in fact, took advantage of this
opportunity.  Indeed, the NCAA policy of 1995-96 at issue here
had been superseded by the new policy reflected in the 1998
Consent Order.  Plaintiff could and did inquire into all the
reasons why the 1995-96 policy was implemented, how it affected
Plaintiff's son, and how the new improved mechanism worked for
applicants from a special education background.  In Plaintiff's
deposition of Mr. Lennon in 1999, for example, Mr. Lennon was
asked "[a]nd today, the process that the NCAA uses to make a
determination about the eligibility for students with learning
disabilities, how does it differ from the process that was in
place in 1996?"  (Def.'s Opp'n Br. Ex. 3.)  By the time Mr.
Lennon was deposed, the 1998 Consent Decree that Plaintiff points
to as evidence of the NCAA's changing eligibility policies had
been in place for nearly a year.  Plaintiff's observation that
the terms of the Consent Decree expired in 2003 and that she does
not know the current state of the NCAA's eligibility policies
does not diminish the opportunities she had to depose witnesses
about the changes in such policies that occurred in the years
following her son's alleged injury.  Plaintiff has no standing to

challenge the current policies, nor is the NCAA obliged in this case to explain or defend those policies, whatever they may be.

Moreover, Plaintiff's prior opportunities to discover the changes that have taken place in the NCAA's policies regarding initial eligibility determinations were not limited to these depositions. As the NCAA explained at the February 25, 2008 hearing, over the course of two full discovery periods it has produced approximately 18,000 documents pertaining to the adoption of its eligibility bylaws, its policies concerning core course requirements and eligibility waivers, and the 1998 Consent Decree. At the same hearing, Plaintiff acknowledged having received documents pertaining to the changes in the NCAA's eligibility policies through July 2001, five years after the alleged act of discrimination underlying this case took place. In short, these discovery periods, depositions, and document production have afforded Plaintiff an "ample opportunity" to discover information pertaining to the NCAA's eligibility policies in 1995-1996 and the changes in those policies that occurred over the following years. F. R. Civ. P. 26(b)(2)(C)(ii).

The second reason for the Court's determination that the proposed discovery is disproportionate to the legitimate needs of this case is the fact that evidence pertaining to the evolution of the NCAA's eligibility policies beyond that which Plaintiff

14

has already discovered is at best only "marginally relevant" to Plaintiff's stated need for the evidence.  Public Service Enterprise Group, Inc., 130 F.R.D. at 551; see also F. R. Civ. P. 26(b)(2)(C)(iii) (the court should limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit" considering, inter alia, "the importance of the discovery in resolving the issues" in the case).  Plaintiff's case concerns the application of the NCAA's eligibility policies to her son in 1995-1996.  While the Court agrees with Plaintiff that evidence regarding subsequent changes in those policies could be relevant to the question of how necessary the policies as applied to Michael Bowers were to the NCAA's ability to achieve its goals, the changes in those policies in the years immediately following the alleged discrimination are considerably more relevant to Plaintiff's claims than is the fact that those policies continued to evolve more than a decade after the 1995-1996 academic year.  The NCAA's practices through the time of Michael Bowers' death were governed by the terms of the Consent Decree, which Plaintiff has had every opportunity to discover and did discover through depositions and the NCAA's truly voluminous document production.  How those practices evolved after the Consent Decree expired is of such minimal relevance to the issues in this case that to require an additional round of discovery

would violate the considerations of proportionality that Rule 26(b)(2)(C) invokes.

It bears noting that Plaintiff's remaining claims attack solely the creation and implementation of the 1995-96 NCAA Division 1 and 2 athletic scholarship eligibility rules as it affected the late Michael Bowers' hopes for a college scholarship.  This is not a situation where Michael Bowers was denied admission to college, as he indeed matriculated at Temple University.  This is not a class action, nor is injunctive relief available to Plaintiff.  If Plaintiff succeeds in proving actionable discrimination, monetary relief is sought.  The costs of litigating this case over these ten years, in this Court and the Court of Appeals, has surely dwarfed the financial stakes that remain at issue.[5]  It is for just such circumstances that the rule of proportionality was adopted.

Furthermore, it is not insignificant that the NCAA concedes that its policies changed between 1996 and 1999 and have

---

[5]  It must also be remembered that Plaintiff has been adjudicated to have committed extremely aggravated discovery abuse, extending over the years of Michael Bowers' drug use and addiction for at least four years leading to his death in 2002, which facts were concealed by Michael Bowers when he was alive, and not revealed until 2004, as found in Bowers v. National Collegiate Athletic Ass'n., No. 97-2600, 2005 WL 5155198, *12 (D.N.J. Mar. 21, 2005), aff'd in part, rev'd on other grounds, 475 F.3d 524, supra.  A party that has behaved so inequitably in discovery at a cost of untold hours of time and years of unnecessary struggle, can hardly claim that even more discovery must be provided now.

continued to change in succeeding years.  See Boody v. Township of Cherry Hill, 997 F. Supp. 562, 574 (D.N.J. 1997) (noting that the fact that defendant conceded the existence of purportedly discoverable information "and [had] already produced documents consistent with this admission" impacts the balance between burdens and benefits of proposed discovery).  Plaintiff has had ten years to gather support for the claims filed in 1997.  In short, the Court finds that Plaintiff has had more than an "ample opportunity" to discover information bearing on the issues in this case, and that the burden of embarking on yet another round of discovery at this point in the case considerably outweighs any marginal benefit that such efforts might yield.  The Court will thus deny Plaintiff's motion to compel additional discovery.

**III. CONCLUSION**

For the reasons discussed above, the Court will deny Plaintiff's motion to compel.  The accompanying Order will be entered.


**February 27, 2008**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge